The next case for argument is Caceres versus Solari. It's a Caceres-Solari versus United States. Good morning, members of the court. Chief Judge Prost. I don't know if you remember. I have argued before you previously. It's a pleasure to see you. I don't know if I've met you, Judge Reyna. I don't know if Judge O'Malley is on speaker, or she is just participating, but send my regards. Your Honors, my name is William Cacera. I represent the appellant in this case, whose last name unfortunately sounds an awful lot like mine, Andres Caceres. It's confused me more than once. Your Honors, we are here to hear two issues in this case. And the first is that under the substantial evidence rule, the trial court was obligated to review the whole record to determine whether the multiple diagnoses of PTSD and Dr. Bashkoff's opinion that there was a nexus between Mr. Caceres' PTSD and his misconduct fairly detracts from the BCNR's decision. And secondly, that under the substantial evidence rule, the trial court was obligated to review the whole record to determine whether the lack of due process at the non-judicial punishment fairly detracts from the BCNR's decision. Your Honors, a brief historical, I know the court knows the facts of the case and knows the history, but if I could have just a minute to do a brief historical. Mr. Major Caceres was a Marine who sustained a head injury from a combat-related deployment in Iraq in 2004. He had numerous other deployments during which he witnessed disturbing events. On July 5th of 2015, he attended a non-judicial punishment proceeding. I know the court is aware of what that is. He was not allowed to review the evidence until approximately, or not able to review the evidence, until approximately 60 minutes before he was to meet with the commanding general. Yes, ma'am. But on this due process question, I mean, this proceedings, we don't get that many of these cases, but there is a whole, I can't even keep the acronym straight because there's so many proceedings he had. So, he decided to forego the court martial proceeding. You're not claiming that's a... Oh, no. ... due process violation, that he had gotten to see the material. So it's just a matter of how much time he had to see the material. It is correct, however, that he was explicitly asked at this proceeding, is it the NJP? The NJP, non-judicial punishment. Yes, ma'am. Did you consult with a lawyer? Did you have time to refer to it? Yada-da. And the answer to all of that was yes. And then, it also seems that even if he accepting that he thought he needed more time and he didn't get it, there were subsequent proceedings, which he also had a further opportunity to dispute the evidence and make his case, right? So I'm having a hard time seeing, you know, we have a lot of due process allegations. I'm having a hard time seeing how this rises to that level. I understand, Your Honor. And let me try and help the court, both with a little bit of information and with some missing, some facts that the Court of Claims left out of their decision. There's one fact in there that is, we believe, extremely important, which was when he was told by his commanding general, quote, don't make this any harder on yourself. When one accepts non-judicial punishment, it is not an admission, per se, of guilt. Now, in this case, he did plead guilty. Okay, but can we separate that out? Because I didn't mean, I mean, I'm talking about due process in terms of his being able to review the material with sufficient time to do that. Let's leave this hearsay argument and whatever to the side. So talk to me about the due process. Sure. So the further proceedings in this case, the Board of Inquiry specifically, which followed after the results of the NJP, and a Board of Inquiry is an administrative board of officers that hears evidence in the case. That was predicated on the fact that he had received non-judicial punishment. So the failure to allow him adequate time to defend himself at the non-judicial punishment proceedings directly affects everything else that happens after that. You know, I appreciate that, you know, it's an intimidating process for most people who are faced with them against some tribunal. But what more? I mean, we're on the other end of that. The court asks them, or not the court, but the NJP asks him, did you have enough time to review? Did you talk to your lawyer, yadda yadda? And the answer's all yes. I mean, if a court can't or a tribunal cannot accept that at face value, then we're going to have a do-over on millions and millions of cases. I don't believe that's the case, Your Honor. I believe that you have to look at it in a couple of different prisms, so to speak. The first is the very peculiar prism of the military, where you're not going in to speak to an impartial board of officers. Or, you know, I don't even know what the case before us was about. I was trying to track, and I'm sorry to say I probably caught about four words of it. But, you know, where there is, I mean, a clearly impartial board, the person that he is appearing before is his commanding general, who certainly is not an impartial observer in all of that, and who holds, if he and my client was a major, the major general's five or six ranks above him, and telling him, don't make this any harder on yourself. Now, having said that, is everything OK with you? Well, sure it is, sir, because you can't take that, those statements out of the prism of what occurs. Can you give me a little more information on just if you can't resist going there, let's go there, which is his wife heard it. I don't understand the timing of when that statement was made. OK, so because he goes in, he's only got an hour to look at the CID stuff, right? Is that when it happens? Right before the pursuit? So the way that this happens is he's given a he's given an hour to review the investigation. He then goes into the commander's room and his wife, I believe the record is fairly clear on this. His wife was on the phone as a witness, and she heard the comments from the commander who is imposing the nonjudicial punishment. So it's two separate rooms during the NGP. Yes, ma'am. That's when the commander says, don't make this any harder on yourself. Let's go back a little bit further. So there was a report handed to him right before the hearing itself, correct? Correct, sir. And when was that report finished? It doesn't reflect that, but it does reflect that his military lawyer, who was in the States while this hearing was taking place in Germany, had emailed or spoken to the staff judge advocate in Germany on several occasions saying, when can we get the report? And then she says, well, he'll get it right before the hearing. And Mr. Casares was asking that lawyer, where's the report? Where is it? Yeah. How do I defend myself? Where's the report? An hour before the hearing. Yes, sir. Now, during the colloquy that happened at the hearing itself, show me where in the record that that occurred. Where was it? Look in the page 980. I understand that to be the colloquy that occurred with respect to whether he was going to waive his court martial or not. Correct. Correct. Is that it?  So does that answer your question, Judge? OK. So, Judge, what I would like to do is, I know this court is aware of the standard of review, so there's no reason for me to go through that. Yeah, but let's talk about that next, because we haven't talked about the nexus either. You've got arguably conflicting medical opinions. Yes, ma'am. How do you think that as an appellate court, given the standard of review, what are we supposed to do with that? Clearly, I mean, you had a lot of process here. You had numerous evaluations. I mean, I know you're not making a due process violation allegation with regard to the PTSD. No, we are not. The government, the military stayed his removal. We saw numerous medical people. You know, on what basis are we to say, no, all of you got it wrong and we're going to pick this particular person over the conflicting evidence of the other people? Well, the Supreme Court gives you that authority in consolidated Edison and universal camera, but we're not asking you to reweigh the evidence. And I know that there is a fine line of demarcation. I want to say distinction without a difference because of the distinction with a very big difference between not reweighing the evidence and determining whether or not there is substantial sufficient evidence in the record that fairly detracts from the decision of the administrative board. So the law gives the court the authority not to, again, I know that it's somewhat of a distinction, but I don't understand. Fairly detracts. You could have six against one and the one on the other side arguably just detracts. But it doesn't fairly detract. And I think that's the that's the term that the case law uses. You have to weigh it, right? That involves a weighing analysis. How do you say decide whether it fairly detracts? Well, and I understand weighing all of the evidence. I understand. As I said, the courts have promulgated a couple of different standards of review that tend to seem like they are contradictory with one another. And we are the first ones to admit that. But we do believe, and Pellin argues, that the law does allow, as the Supreme Court has said, Congress has made it clear that I'm not suggesting that under the standard review of the evidence, it's impossible to ever in the hypothetical for us to overturn that. But we're talking about this case. Yes, ma'am. And in this case, we've got looking at the number of medical reviews and even the numbers of one, how on earth on this given this differential standard of review, are we to second guess the weight that was assigned the varying things? And your answer to me seemed to be whether it fairly, but I don't understand how we evaluate under these circumstances in this case. OK, well, the evidence is three. Sure, Your Honor. And I think the answer to that question is clear that the evidence of the PTSD diagnosis by three medical providers and a social worker on the nexus between PTSD detracts from the weight of the B.C. and our decision. Tell me that again, because PTSD, there's no dispute that he has PTSD. That's correct. So the only question is the next the next. Yes, you had Dr. Bash, Dr. Bash call that made a determination. And who are the others that said, well, just so I'm clear. Your honor, the PTSD diagnosis was made by three medical providers. OK, but that's not just the nexus. Yeah, I think it is disputed to some degree. Your honor, I think that Dr. Evans said that it was, you know, severe stress. OK, well, it's let me take it off the table. OK, just talk to me about nexus. Sure. It seems to me that the only person that you witness or medical professional you had opining about the nexus in your favor was Dr. Bashcock. Am I right about that? That is correct. Your honor. OK, yes. And so if the question is, you know, as you look at the sort of two contrary opinions that the court has sort of taken off the table, Dr. Evans and Dr. Richter, they don't because they don't really find PTSD. They sort of skirt around it. Then they certainly don't find nexus. So I don't I don't suggest we're going to take it off the table. But yeah, so I'm not taking them off the table. So take them off. So for this argument, yeah, these are medical professionals who did an evaluation. And they're on the they are on the table. Right. And so the BCNR is not free to simply say, well, we're going to disregard these four. So you think they had to do a two step and they should have looked at all of this and made an initial evaluation? Did he have PTSD? And then once they if they concluded that the weight of the evidence was that he did have PST, then they should have ignored the other doctors. No, your honor. And in fact, their own doctor, Dr. Evans, wanted to do further research. The government's own doctor said, I want further research. He wanted to do further evaluation and even considered hospitalizing him. So what you're really left with is commander. I want to say Dr. Bishop, I may have the name wrong, but saying, you know, Commander Richter, excuse me, saying, you know, making his findings. Dr. Evans saying I need to do more evaluation. And Dr. Bashkoff saying Dr. Richter's decision fails to take into account all of these other factors. And the courts or the BCNR simply says, well, we pick this one over these. And we believe that that is where the the evidence would fairly detract or that there is not substantial evidence to prove for the BCNR in which to rest its decision. Subject to further questions from members of the court. Thank you. Thank you, Your Honor. As you heard from my opponent, the appellate raises two issues on appeal, nexus and due process. And given that you just left off with nexus, I'll start by addressing the nexus argument. And we absolutely can. We go first to the due process. Sure, Your Honor. That's how we started this argument. Did Mr. Kaciris ever get a chance to go over the investigative report with his lawyer? As I understand it, he did not get a chance to go over the report with his lawyer. How long was that report? It's over 100 pages. It was approximately 100 pages. And it is in the record. But I want to be clear what didn't. Does that report contain both evidence that incriminates him and also evidence that may exculpate him? Yes, it does. And I note for the record, Mr. Kaciris Solaris did receive a charging sheet. He received, before the nonjudicial punishment, a fairly detailed and extensive charging sheet that went through each of the charges being raised against him and the specification. So some of the facts. Did he get that before he got the investigative report? He did. He had that well in advance and had an opportunity to go through that with his attorney. So what he didn't see are the specific witness statements, et cetera, against him until approximately an hour before NJP. And even at that point, he had every opportunity to reach out to his lawyer to ask for a delay. He did none of that. As we noted, the very first question at NJP is, do you understand that you have a right to refuse nonjudicial punishment? To which he answered, yes. And so I think, for example, did he know that charge one was later found to be unsubstantiated? Yes, as I understand it, Your Honor. He did. And if you'll indulge me, I'll point you to the record. Show me where he knew that. Look at Appendix 87, Your Honor. I believe it starts at Appendix 85. My apologies. You would see the notification of intent to impose nonjudicial punishment. And here we see charge one laid out, and it continues to go through each of the charges and specifications, which set forth in fairly good detail exactly what the charges against Mr. Kassara Solari were. And then did he respond to this? Is there an intermediate response by him or his lawyer? There was not a response, I think, here. What he did, though, was reach out to several individuals for character witness statements. So he absolutely had an opportunity to prepare for NJP. But did he know that charge one was found to be unsubstantiated by the investigating officer? I'm not aware, based on this record, Your Honor, that he was aware of that. I do know he received this charge sheet, so he would have known what the charges and specifications were. I'm not aware that he received the report from the command-directed investigation, which would have told him what the decision was. That was all in the CID? Right. And that was approximately 100 pages in what he had an opportunity to review before NJP. Now, granted, it appears due to some technical errors with computers, he only received the hour. But again, he did have counsel that he could consult with with respect to the charge sheet and could have, if he felt like he needed more time, requested more time or reached out to his counsel to ask for more time. Well, I think their answer to that is that this his commander made some intimidating statement that made him think that as a practical matter, he couldn't ask for more time. Right. And I think that that statement appears to have been, don't make the situation worse. I think that statement is up to interpretation. Insubordination, correct? And here he is before a superior officer who's told him, don't make this harder than you need to or something like that. If he disobeys that, is he being insubordinate? Well, I would say no, Your Honor, particularly because a few minutes later, he's asked the question, do you understand your right to refuse NJP? So if he understood that comment to be directing him to accept nonjudicial punishment, but he's then later asked, do you understand your right to refuse nonjudicial punishment? At a minimum, he could say, I do, and I'd like to consult with my attorney. Instead, he just said yes. And so he accepted the terms of NJP. He went in quite prepared, having consulted with his lawyer, having reached out to character witnesses, et cetera. His time was shortened in terms of review of the report. But again, how can he be prepared if he doesn't have the investigative report that identifies potential witnesses that may testify on his behalf or against him? Well, no, Your Honor, for the record, at that point in time, he says, wow, I should get this witness. I should have this particular person here at the hearing. And yet it's an hour before the hearing. And he could have requested more time, but he didn't. Are you familiar with the case Fairchild versus Lehman? Which one is that, Your Honor? Was it cited in the briefs? Well, it's 814 Federal Second, 1555. It's not cited in the brief. But it is a case that deals with waiving the statutory right to a court martial. And in that case, we cited Brady, another case that said that waivers not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of all of the relevant circumstances and the likely consequences. If he didn't know that one of the charges that was brought against him was later found to have been unsubstantiated by one of the investigating officers, if he didn't know that, then how can we say that he waived his court martial with sufficient awareness of all of the relevant circumstances? Well, I'd argue, Your Honor, that he did have an hour to review the record. And if he felt like he needed more time, he could have, at that time, requested more time or asked for time to consult with his attorney to get more time. He didn't do any of that. He absolutely accepted the nonjudicial punishment. And I know just to... Can I just ask you, because I'm unclear, because as I said, we don't have that many of these cases in this hierarchy of different acronyms to decide this. I understood that before the day of this NGJP or whatever, he had already decided he wanted to do an NGP and gave up his right to a court martial. Yes. So that was already a done deal with his lawyer. I believe that happened when he received the notice we just talked about, which was at Appendix 87. The question here is, even if he's got, he waived the right to a court martial, his due process issue is before the NGP. He still, even though he agreed to an NGP, should have had opportunity to make more of his case. Was that arguably a proceeding that if he had come in, what if he had had one hour or two hours and said, I want to argue for, you know, for a lower punishment or against some of these charges, is that the body that adjudicates that? I understand that if he would have come in and said, I need more time, he would have been given more time. But more time for what? What was this tribunal supposed to be doing? This tribunal ultimately issued a letter of reprimand. So they were looking at the misconduct and making a decision as to what the consequence for non-judicial punishment should be at that time. But it was at this tribunal that he officially waived his right to a court martial. Yes, that's that's that's your position that he did it at this tribunal. OK, can you make that clear? Because I didn't understand the record. I may be wrong. I thought he waived his right to a court martial when he received the notice. Well, I know he received the notice weeks before, Your Honor, but I think it is during. I mean, I may absolutely be wrong on this, so just maybe I misunderstood. Yeah, I think it is during the actual NJP proceeding. So if you look at Appendix 979, that is in July of 2015 at non-judicial punishment is where he actually has to make the final decision. So I believe when he received the notice at the very same time, he is assigned defense counsel and he has an opportunity to read the charges against him, to work with his counsel, to make a decision as to whether he wants to accept non-judicial punishment. Up until the moment he walked into the room and said yes and signed this, he had every opportunity to either request more time or to go another route. Oh, OK, so he could have resented or he absolutely could have gone another route. So he chose to accept non-judicial punishment. So once they did the reprimand, yes, then there's another proceeding. And he had he challenged I mean, by then he obviously had plenty of time to look at the report and he challenged that. He did. So what does somebody just get two bites of an apple or is this under a more limited standard of view? There were several bites of the apple, Your Honor. But ultimately, the Board of Inquiry is a bit different from non-judicial punishment. The Board of Inquiry did its investigation and it is the one that makes a recommendation for separation from the U.S. Marine Corps. And so there was, as you mentioned, the command directed investigation followed by non-judicial punishment. But what the BOI does is obviously presumably predicated on what happened beforehand. As I understand, it is not. So it's predicated on the finding of misconduct. But the decision to separate him is totally separate and the BOI makes that decision. So would he have an opportunity then? I mean, if he had looked, he had time by then to look at the CIT. Does he have the same opportunity as he would have had when he was before the NJP to question and make assertions about the merits of certain of the allegations? Absolutely, he did. And in this case, he did. He has several character witnesses, etc. So isn't it the case that he gets a challenge at the Board of Inquiry, he gets a challenge there, but he never gets back his full court martial rights. He never gets back the right to subpoena witnesses and to present other evidence that wasn't presented before. He doesn't give back his court martial rights, but he never requested them. And even today, they haven't said they want to be back where they were before they accepted NJP. I mean, the argument was that the Board of Inquiry might have gone different, but he's never requested to be put back where he was. So I don't think that even is an issue, Your Honor. But at the next stage, the Board of Inquiry, he absolutely had an opportunity to defend himself and, in fact, did. And part of the reason that this record is so voluminous is exactly that, that there were various steps after the Board of Inquiry, his separation. Well, one, the Board of Inquiry decision had to go up two levels to high arfies to be approved for his separation, and it was approved at both levels. But that decision to separate Mr. Kassara Salari was put in abeyance twice while the government looked again and considered whether or not he should be separated under these circumstances. And then once the decision was finally made that this misconduct was so egregious that he should no longer serve, he appealed to the Board of Correction of Naval Records. So it had already been through several levels of review before we got before the Board. And then just further, quickly, to lead us to the nexus issue, by the time we're presented to the Board, again, it's been through several levels, but the Board looked at exactly what this court is looking at and exactly what was before the trial court. And so, indeed, although we can focus, or my opponent focuses on the detracts from language, the fact is all of the evidence that's before you is the same evidence that was before the board that was carefully considered and weighed. And so what opponent asked this court to do is to reweigh that evidence. Is it your position that we don't, that the question with respect to the waiver of the court martial law, that's not before the court, or that we don't have the jurisdiction to review that at this point? The question of whether the waiver of, it is, Your Honor, it is, Your Honor, it seems clear from the record, even at the levels of review, because again, due process issues, as you've said, Chief Jeff came up several times. It's clear from the record that these questions were considered by the Board and considered at other levels and found to be without merit. So the third game for this appeal, correct? Absolutely. Okay, let's turn to the nexus. You heard what your friend said about the evaluation of various medical experts. So appellant cites to the Universal Camera Corporation case, which is a 1950 Supreme Court case where the court looked at appellate court's ability to review decisions of administrative bodies under the APA. And I just know they addressed what's happening right here, which is whether there are conflicting opinions being presented. And they said, this court specifically noted that this court may not displace the Board's choice between two conflicting views, even if the court would have justifiably made a different choice if the matter were before de novo. And so as we discussed, we're looking at an opinion from Dr. Biaschoff, who did find that the PSTD was connected to Mr. Kassara Salari's misconduct, versus the advisory opinion of Dr. Richter, Dr. Evans' opinion, and other opinions from military medical professionals who said the conduct was not, there was no nexus between the misconduct. And I note, Your Honor, for the court, the Board made a finding. The Board specifically said, even if there was PTSD, so if we go where you said earlier and we just give the PTSD, the seriousness of the misconduct here outweighed any mitigation that would be offered by the PTSD. And so the Board did its job. It carefully reviewed this. It gave liberal consideration to the nexus arguments. And they specifically note that they gave liberal consideration to the arguments. So your view of the record is that they said, we don't care. I mean, in other words, it doesn't matter. Not that we don't care, that was too strong. That it doesn't make any difference, because even if he had PTSD, and even if we believe that there was a nexus between the charged conduct here and the PTSD, it just doesn't make any difference. Is that an excuse? My view of the record is that they said, first, we don't believe that PTSD is connected here. They said the timing of when the PTSD treatment was raised, which was after he was ordered to separate, suggests that what's happening here is stress-related to the job and not PTSD. But if there is PTSD, we don't find that it's connected to the misconduct, and we don't find that it's enough to outweigh or mitigate the seriousness of the offense here. And so we believe he should still be separated. And that is what the board said. That's that Appendix 75. Thank you. Thank you. Your Honor, what I would like to do is to go to the due process issue and sort of help Judge Reyna and yourself with how the process works in a general sense. Your Honor, when you're commanding- Can you just ask her specifically, maybe this will help us do it, because we don't have a lot of time. I didn't understand, but maybe I'm wrong, that your complaint here is we didn't have the appropriate opportunity to make an evaluation as to whether or not we should have picked the court-martial as opposed to this non-judicial proceeding. So your relief would therefore be that you get to go to square one and get to a court-martial to adjudicate these claims. I didn't know and appreciate that that was what you were arguing. So is that what your position is? Is that what this case is about? It is Part A, yes, and Part A-1 is. But even if this court finds that the decision of whether or not to accept non-judicial punishment is, to use our previous lexicon, off the table, the issue is still that when one accepts non-judicial punishment, they are still allowed to present evidence to their commander in defense and in mitigation. No, but back to my first point. There were several other proceedings after this, including the BOI. Did he ever raise, I didn't have an opportunity to look at this material, and therefore, I want to go back and have a court-martial? The BOI would not have the authority to do that. Well, does anybody have the authority? The BCNR did, and it was raised at the BCNR. And he asked to go back and have a non-judicial court-martial? Well, I don't know that we specifically, I wasn't the counsel of that. I'd have to reread the BCNR petition. I don't know that we specifically asked for that remedy, but he certainly did point out that the non-judicial punishment should be vacated because he was not afforded due process. No, I know. I'm just thinking those are two separate questions. They are. And to answer your question as to whether he specifically requested to a redo, no. But that's not the normal remedy if a non-judicial punishment is determined to be invalid. The normal remedy is to wash it, is to, not a do-over, but it's just vacated, for lack of a better term. Does that help the court? Yeah. Okay. Subject to any further questions from the members of the court? My time is up. Hold on. Maybe Judge Reina. Judge Reina? All right. Thank you very much, members of the court. Have a wonderful day.